# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1904 | **DATE** | 8/16/2001 |
| **CASE TITLE** | Hazel Hartman vs. Lisle Park District, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated above, the Court grants the Lisle defendants' motion to dismiss. (7-1) The dismissal of Counts 2 and 3 is on the merits. The Court grants plaintiff leave to file an amended complaint with regard to her First Amendment claim on or before 8/24/01. Defendant Friedman & Holtz's motion for summary judgment (11-1) and plaintiff's motion to conduct discovery with regard to the motion for summary judgment (14-1) are denied as moot. The case remains set for a status hearing on 8/28/01 @ 9:30 a.m. for the purpose of setting a discovery schedule.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 17 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 20 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TP | courtroom deputy's initials | CO-7 FILED FOR DOCKETING 01 AUG 16 PM 5:16 | |
| | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAZEL HARTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 01 C 1904 |
| ) | |
| LISLE PARK DISTRICT; TOM FREY; ) | |
| KIM BRONDYKE; BARB BAKEL; ) | |
| DONALD COOK; MICHELLE MICHALS- ) | |
| STERLING; JOHN HEDGES; and ) | |
| FRIEDMAN & HOLTZ, P.C., ) | |
| ) | |
| Defendants. ) | |

DOCKETED
AUG 1 7 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In her complaint in this case, Hazel Hartman, who was the Administrative Services Manager of the Lisle Park District, says that she observed the District's Director, Kim Paetschow, engaging in practices constituting the improper use of public funds. She says that Tom Frey, who became the President of the District's Board in April 1997, told District employees that the Board had confidence in Paetschow and did not want to hear any complaints about her, and if any employee did complain he would report the identity of the complainer to Paetschow.

In December 1999, a lawyer acting on behalf of Hartman and another District employee wrote a letter to the DuPage County State's Attorney detailing alleged improprieties committed by Paetschow on various dates, including in May, October, November, and December 1999. In March 2000, Hartman testified before a DuPage County grand jury about the allegations. On May 8, 2000, Paetschow was placed on administrative leave. The next day, an attorney from

Friedman & Holtz, the law firm representing the District, allegedly threatened Hartman and other employees with "prosecution" for slander and told them that they were "on their own" concerning the investigation of alleged improprieties. The District retained another attorney from F&H as an internal investigator.

In June 2000, the Board's members were subpoenaed to testify before the grand jury, and the Board named a new interim director, John Hedges. Hartman alleges that Hedges ordered her not to use the fax machine or touch any correspondence and that he demanded her keys, which made it impossible for her to access files that she needed to do her job. She says she was told by the Board's personnel chair that the Board wanted to "contain things" and blamed her for the controversy because she had not followed the proper "food chain." Shortly after this, Hartman went on medical leave due to work-related stress.

Hartman alleges that in September, she was fired "because she spoke to the DuPage County State's Attorney's office and testified before the Grand Jury regarding ... Paetschow's improper activities." Cplt. ¶29. Hartman alleges that this violated her First Amendment rights as well as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/3. She has sued the District and several current or former Board members.

Hartman also alleges that in the course of its investigation on behalf of the District of alleged improprieties by District personnel, F&H investigated her, resulting in the preparation of what she says was a "consumer report" within the meaning of the Fair Credit Reporting Act. She contends that F&H and the District violated the FCRA because they did not notify her that they were investigating her, obtain her consent prior to the investigation, or provide her with a copy of the report.

The District and the Board members (the "Lisle defendants") have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). In addressing this motion, we take Hartman's allegations as true, and can dismiss her claims only if "it appears beyond doubt that [she] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Friedman & Holtz has moved for summary judgment on the FCRA claim made against it. Part of that motion incorporates the District's Rule 12(b)(6) motion seeking dismissal of the FCRA claim. The Court can properly address that aspect of F&H's motion at this juncture, as it involves the sufficiency of the complaint.

**1.  First Amendment claim (Count 1)**

The First Amendment prohibits government from conditioning public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *See Connick v. Myers,* 461 U.S. 138, 142 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968). Put another way, a public employer cannot (among other things) terminate an employee for exercising her free speech rights. The First Amendment is implicated, however, when a public employee speaks as a citizen upon a matter of public concern, not when she speaks as an employee upon matters only of personal interest. *Connick,* 461 U.S. at 147.

Hartman's communications to the State's Attorney and the grand jury concerned a public official's alleged abuse of her office to advance the official's personal interests. It is beyond question that the subject matter of these communications involved matters of public concern. "It is important to good government that public employees be free to expose misdeeds and illegality in their departments. Protecting such employees from unhappy government officials lies ... at the core of the First Amendment." *Myers v. Hasara,* 226 F.3d 821, 826 (7th Cir. 2000).

3

The Lisle defendants argue that because Hartman "was not speaking out as a citizen, but rather, as an employee with a duty to report such conduct," her speech was not protected. Dfdt. Mem. at 7. The Court rejects this argument. The fact that Hartman may have had a common law fiduciary duty to report Paetschow's alleged misconduct to her superiors does not mean that she was speaking in her capacity as an employee when she talked to the State's Attorney and testified before the grand jury. In *Gonzalez v. City of Chicago,* 239 F.3d 939 (7th Cir. 2001), the case on which defendants most heavily rely, the speech in question was an internal report prepared by a civilian employee of the Chicago Police Department's Office of Professional Standards as part of his regular day-to-day duties. *Id.* at 940. The Seventh Circuit held that because the reports were "created in the scope of [Gonzalez's] ordinary job responsibilities," they did not involve speech as a citizen, but rather "merely as an employee." *Id.* at 941. Defendants do not contend, nor could they credibly do so, that testifying before the grand jury and meeting with prosecutors was part of Hartman's day-to-day duties. As Hartman argues, whether or not she had a duty to report the alleged misconduct to her employer, she was acting as a citizen, not as an employee, when she reported it to law enforcement authorities.

Defendants also argue that Hartman was "acting for her own private concern," claiming that she had kept Paetschow's alleged misconduct to herself for years and was hoping to protect herself from her own misconduct by strategically reporting Paetschow to the authorities. But this contention does not find support anywhere in Hartman's complaint. A ruling in defendants' favor on this point would require the Court to ignore the complaint's allegations, which we cannot do at this stage of the proceedings.

For these reasons, the Court concludes that Hartman has stated a claim for violation of

4

her First Amendment rights.

The District argues that Hartman has failed to make allegations sufficient to impose liability upon the District for the alleged First Amendment violations. In actions under 42 U.S.C. §1983, a municipal entity like the District may be held liable only if the alleged constitutional deprivation was caused by a policy, custom, or practice of the municipality, or by a municipal official with final policymaking authority. *E.g., Monell v. Department of Social Services*, 436 U.S. 658 (1978); *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995). Hartman argues that the Board members who determined to discharge her exercised final policymaking authority on behalf of the District. Hartman's argument finds support in Illinois law. The Illinois statutes concerning the establishment and governance of local park districts make it clear that a park district's board exercises the final authority on behalf of the district. *See, e.g.*, 70 ILCS 1205/4-1, 4-8, 4-9. The Court also agrees with Hartman that when "the ultimate decision-making authority itself has committed the unlawful act," *Felton v. Board of Commissioners of County of Greene*, 5 F.3d 198, 203 (7th Cir. 1993), the requirements of *Monell* and its progeny are satisfied. But what is missing from Hartman's complaint is any allegation concerning the role that the Board played in her termination; the allegation that the Board members were members "when the decision was made" to terminate Hartman hedges the point and thus falls short. Thus as currently worded, the complaint does not contain allegations sufficient to support a claim against the District under §1983.

The same is true regarding the individual Lisle defendants. To be liable under §1983, an individual must be personally involved in the deprivation of the plaintiff's constitutional rights. *See, e.g., Gossmeyer v. McDonald*, 128 F.3d 481, 494-95 (7th Cir. 1997). As noted above,

5

Hartman alleges that each of the Lisle defendants was a Board or staff member of the District at the time of her termination but does not say whether any of them participated in the termination decisions. We will give Hartman leave to amend her complaint to attempt to cure these deficiencies.

Hartman does not dispute that under §1983, she cannot obtain punitive damages from the District. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Her claim against the District for punitive damages based on the alleged First Amendment deprivation is therefore stricken.

**2.      Fair Credit Reporting Act claim (Count 2)**

Hartman alleges that following her testimony before the grand jury, the District "began an investigation of alleged improprieties at the [P]ark [D]istrict" and retained the law firm of Friedman & Holtz "to conduct the investigation as to the alleged wrongdoing of the park district's director Kimberly Paetschow." Cplt. ¶¶36-37. Hartman alleges that F&H also investigated her. *Id.* ¶39. F&H then issued a report to the Board which evidently concerned (at least in part) Hartman's actions; Hartman says that this constituted a "consumer report" as that term is used in the FCRA. *Id.* ¶40. Hartman says that the investigation violated FCRA because the District and F&H did not advise her that she was being investigated, did not obtain her consent, and did not provide her with a copy of the report. *Id.* ¶41.

FCRA defines a consumer report as "any written, or, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as

a factor in establishing the consumer's eligibility for ... (B) employment purposes." 15 U.S.C. §1681a(d)(1). Nothing in the complaint indicates that F&H's investigation and its report concerned Hartman's credit history, her character, her general reputation, or her personal characteristics or mode of living. Rather, it appears to be undisputed that F&H's investigation and report concerned Hartman's dealings with the District. *See* Dfdt. Mem. at 11-12 (making this argument); Pltf. Resp. at 9-11 (taking no issue with defendants' argument). Thus the report does not fall within the scope of FCRA.

In addition, a "report containing information solely as to transactions or experiences between the consumer and the person making the report" does not constitute a "consumer report" under FCRA. 15 U.S.C. §1681a(d)(2)(A)(i). As described in Hartman's complaint, the report concerned only her dealings with her employer, the District. Hartman argues that the "person making the report" was F&H, not the District, and she says that for that reason, the exception does not apply. She relies both on the language of the statute and on interpretations of the FCRA by a staff member and the chairman of the Federal Trade Commission, which is charged with administering the statute.

The FTC staff opinion letter cited by Hartman concerned an attorney's inquiry about an employer investigating an allegation of sexual harassment; the attorney asked whether the FCRA would apply to an outside organization hired by the employer to conduct an investigation. An FTC staff member replied that the answer was yes, so long as the outside organization otherwise qualified as a credit reporting agency and the report qualified as an investigative consumer report. Letter of C. Keller to J. Vail, April 5, 1999, found at http://www.ftc.gov/os/statutes/fcra/vail.htm. The letter did not, however, address the "transactions or experiences" issue involved in this case.

7

In short, the staff member's letter, even if it were entitled to some deference in interpreting the statute, is of little or no assistance here.

On March 31, 2000, however, FTC Chairman Robert Pitofsky stated in a letter to a member of Congress concerning proposed amendments to the FCRA that "[i]n the employment context, an outside agency (such as a private investigator or law firm) that regularly conducts investigations of alleged workplace misconduct by employees is very likely a 'consumer reporting agency' and the report it makes to an employer is likely to be a 'consumer report' within the meaning of the FCRA." Letter of R. Pitofsky to Rep. Pete Sessions, Mar. 31, 2000, found at http://www.ftc.gov/os/2000/03/ltrpitofskysessions.htm. This letter does directly address the point at issue here.

Under prevailing principles of administrative law, however, the FTC opinion letters are entitled to respect but not deference. There is no indication that either of the letters even constituted the formally-adopted opinion of the agency. The Supreme Court recently explained that"[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (referring to *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). Such letters are akin to an agency's interpretive guidelines, which are not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," *Reno v. Koray*, 515 U.S. 50, 61 (1995). The FTC opinion letters interpreting the FCRA are entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade." *Id. See also Johnson v. Federal Express Corp.*,

8

147 F. Supp. 2d 1268, 1273-74 (M.D. Ala. 2001) (concluding that the Vail letter is not entitled to deference); *Robinson v. Time Warner, Inc.,* 187 F.R.D. 144, 148 n.2 (S.D.N.Y. 1999) (same).

After careful consideration of the arguments contained in the letters, we find them unpersuasive and we reject their construction of the statute. There is nothing in the FCRA or its history that indicates that Congress intended to abrogate the attorney-client or work-product privileges, as would be the effect of applying the FCRA's requirements (which include disclosure of the report) to reports of the type at issue in this case. Moreover, we think that a report prepared by an attorney about an employee's transactions or experiences with the attorney's client (the employer) qualifies as a "report containing information solely as to transactions or experiences between the consumer and the person making the report" within the meaning of §1681a(d)(2)(A)(i), even though the report is prepared by an entity other than the employer. *Accord, Friend v. Ancillia Systems Inc.,* 68 F. Supp. 2d 969, 974 (N.D. Ill. 1999). An attorney is the agent of his client, *Steffes v. Stepan Co.,* 144 F.3d 1070, 1075 (7th Cir. 1998), and the client is bound by the attorney's acts and statements made within the scope of their relationship. *Diersen v. Chicago Car Exchange,* 110 F.3d 481, 489 n.8 (7th Cir. 1997); *United States v. 7108 West Grand Ave., Chicago, Illinois,* 15 F.3d 632, 633 (7th Cir. 1994). Thus an attorney is not a "third party" in the same way that a credit bureau or a detective agency would be in this context. Unlike those types of contract workers, the attorney has a relationship of trust, confidence, and confidentiality with his client and owes the client a duty of loyalty that among other things precludes the attorney from taking on engagements that would give rise to a conflict with the client's interests. *See, e.g., Pommier v. Peoples Bank Marycrest,* 967 F.2d 1115, 1119 (7th Cir. 1992); *In re Schuyler,* 91 Ill. 2d 6, 10, 434 N.E.2d 1137, 1139 (1982). Indeed, the attorney's duty

9

to the client survives, to some extent, the end of their relationship. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 177, 685 N.E.2d 871, 877 (1997); *Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998). When an attorney conducts for an employer/client an investigation of an employee's dealings with the employer, he is acting *as* the client, just as would be the case if the employer had one of its employees conduct the investigation. This is qualitatively different from the situation that exists when an employer contracts with an outside entity lacking a fiduciary and agency relationship like that of attorney and client.

For these reasons, the Court dismisses Count 2.

### 3. Illinois Whistleblower Act claim (Count 3)

Count 3 is a claim under the Illinois Whistleblower Reward and Protection Act. The Act imposes liability for damages and penalties upon persons who make false claims to the State of Illinois, directs the State Police to investigate violations and empowers the Attorney General to bring actions for violations, and also authorizes *qui tam* actions by private persons on behalf of the State. 740 ILCS 175/3 & 4. In the provision upon which Hartman relies, the Act states that any employee who is discharged, demoted, suspended, threatened, harassed, or otherwise discriminated against in the terms and conditions of his employment because of lawful acts "in furtherance of an action under this Section," including investigation for, initiation of, testimony for, or assistance in an action to be filed under section 4, may sue for damages and reinstatement. *Id.* 4(g).

The statute does not apply to Hartman's case as she describes it in the complaint. She does not claim that she dealt in any respect with the State Police or the Attorney General, nor does she claim that the DuPage County State's Attorney's investigation had anything to do with

the possible filing of a civil false claims action under the Whistleblower Act (as opposed to a criminal prosecution). Without such allegations, Hartman cannot state a claim under section 4(g).

Assuming the Act nonetheless applies to the conduct alleged here, Hartman cannot maintain a claim against the Lisle defendants for the alleged violation. State law claims against Illinois public officials and entities are subject to the provisions of the Illinois Tort Immunity Act. The Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. A park district is considered to be a "local public entity." *Id.* 1-206. A public employee in a position involving the exercise of discretion is not liable (and thus the public entity/employer is not liable) for an injury resulting from an act or omission in determining policy when exercising that discretion, even if the employee abuses his discretion. *Id.* 2-201. Decisions regarding the hiring and firing of employees are considered discretionary acts within the meaning of section 2-201. *Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 675 (1996); *Sommer v. Oak Brook Park District Board of Park Commissioners*, No. 95 C 3509, 1996 WL 422152, at *11 (N.D. Ill. July 24, 1996).

Section 2-201 does not permit an exception for conduct that is willful and wanton or that is corrupt and malicious. The court in *Sommer* held that such exceptions existed, *id.* at *12, but this holding has been superseded by more recent decisions by the Illinois Supreme Court. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 195-96, 680 N.E.2d 265, 273 (1997) (no exception for willful and wanton conduct); *Village of Bloomingdale v. CDG Enterprises, Inc.*, ___ Ill. 2d ___, ___ N.E.2d ___, 2001 WL 695092, at *5-6 (Ill. June 21, 2001) (no exception for conduct with

11

"corrupt and malicious" motives).

The Tort Immunity Act provides that it does not affect the liability of public employees or entities under a number of listed statutes. 745 ILCS 10/2-101. The Whistleblower Act, however, is not one of those statutes. The fact that the Act may have been passed subsequent to the enactment of section 2-101 is of no consequence; Hartman cites no authority, and the Court is aware of none, supporting the proposition that later-enacted statutes are somehow automatically except from the Tort Immunity Act. Indeed, the Illinois Supreme Court has repeatedly "admonished against reading exceptions into or engrafting tacit limitations onto the Tort Immunity Act's language." *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 376, 687 N.E.2d 1042, 1046 (1997).

For these reasons, the Court dismisses Count 3.

## Conclusion

For the reasons stated above, the Court grants the Lisle defendants' motion to dismiss [Docket Item 7-1]. The dismissal of Counts 2 and 3 is on the merits. The Court grants plaintiff has leave to file an amended complaint with regard to her First Amendment claim on or before August 24, 2001. Defendant Friedman & Holtz's motion for summary judgment [Item 11-1] and plaintiff's motion to conduct discovery with regard to the motion for summary judgment [Item 14-1] are denied as moot. The case remains set for a status hearing on August 28, 2001 at 9:30 a.m. for the purpose of setting a discovery schedule.

Date: August 16, 2001

MATTHEW F. KENNELLY
United States District Judge